UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE TALBOTS, INC. and NATIONAL   *
UNION FIRE INSURANCE COMPANY   *
OF PITTSBURGH, PA,   *
  *
       Plaintiffs,   *
  *
     v.   *           Civil Action No. 10-10395-JLT
  *
DYNASTY INTERNATIONAL, INC.   *
 and CSX TRANSPORTATION, INC.,   *
  *
       Defendants.   *

MEMORANDUM

August 23, 2011

TAURO, J.

I.     Introduction

    The Talbots, Inc. (the "Talbots") and Dynasty International, Inc. ("Dynasty") entered into

a series of contracts for the shipment of goods. The goods were allegedly damaged or stolen by

the time the Talbots received them. The Talbots, along with their insurer, National Union Fire

Insurance Company of Pittsburgh, PA, (collectively "Plaintiffs") sued both Dynasty and CSX

Transportation, Inc. ("CSXT") (collectively "Defendants"), alleging negligence and breach of

contract.[1] Defendant CSXT filed a counterclaim against the Talbots.[2] Defendants have moved

---

[1] Pls.' Am. Compl. [#3].

[2] Am. Answer, Affirmative Defenses & Countercl. Am. Compl., 8–9 [#6]. Dynasty filed
cross-claims against CSXT, Dynasty Answer & Cross Cl., 8 –14 [#13], but these cross-claims
were later dismissed without prejudice. Stipulation Dismissal Dynasty Int'l, Inc.'s Cross Cl.
Against CSXT Without Prejudice [#21].

for summary judgment, arguing, inter alia, that Plaintiffs' claims are time-barred.

Presently at issue are Dynasty's <u>Motion for Summary Judgment Against Plaintiffs</u> [#22], CSXT's <u>Motion for Summary Judgment Against Plaintiffs</u> [#26], Plaintiffs' <u>Motion to Amend Complaint to Add CSX Intermodal Terminals, Inc. as a Defendant</u> [#34], and CSXT's <u>Motion to Strike Plaintiffs' Opposition to CSXT's Motion for Summary Judgment and Affidavit of C.R. McCauley</u> [#39]. For the following reasons, Dynasty's <u>Motion for Summary Judgment</u> and CSXT's <u>Motion for Summary Judgment</u> are ALLOWED, Plaintiffs' <u>Motion to Amend Complaint</u> is DENIED, and CSXT's <u>Motion to Strike</u> is DENIED AS MOOT.

II.     <u>Background</u>[3]

Plaintiffs do not dispute that Dynasty operates in one of two ways. Dynasty sometimes operates as a non-vessel-operating common carrier ("NVOCC"), in which case Dynasty assumes responsibility as a principal for the carriage of goods and issues a bill of lading.[4] Alternatively, Dynasty, instead of operating as a carrier, issues a Forwarder's Cargo Receipt ("FCR") and operate as a freight forwarder.[5] As a freight forwarder, Dynasty only assumes responsibility as an agent for using reasonable care in selecting third parties to handle the transportation of goods.[6]

---

[3] This court presents these facts in the light most favorable to the party that does not prevail on summary judgment, here, Plaintiff. <u>See</u> <u>Alliance of Auto. Mfrs. v. Gwadosky</u>, 430 F.3d 30, 34 (1st Cir. 2005) ("[L]ike the district court, we must scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof." (internal citation omitted)).

[4] Dynasty Concise Statement Material Facts Supp. Mot. Summ. J. ¶¶ 3–4 [#24] [hereinafter Dynasty Statement Facts].

[5] Dynasty Statement Facts ¶ 5 [#24].

[6] Dynasty Statement Facts ¶ 5 [#24].

The Talbots contracted with Dynasty for two shipments of goods (carrying cartons of women's clothing) from China to Massachusetts.[7] The two shipments contained fourteen containers.[8] Between February 12, 2009 and March 9, 2009, Dynasty issued fourteen documents, one document to govern each of the fourteen containers.[9] Two of the governing documents were labeled at the top as "bill[s] of lading."[10] The remaining twelve documents were designated as "forwarder's cargo receipt[s]" ("the twelve FCRs").[11]

The twelve FCRs contained terms and conditions on the back, which included two particularly relevant sections. Section One of the twelve FCRs' terms and conditions precluded Dynasty for any liability for loss, damage, expense or delay to the goods, unless Dynasty carried, stored, or otherwise physically handled the shipment.[12] Section Nine of the twelve FCRs' terms and conditions required both that (a) any claim for loss be presented to Dynasty within ninety days

---

[7] Pls.' Am. Compl. ¶¶ 6–7, 23 [#3].

[8] See Pls.' Opp'n Dynasty Mot. Summ. J, Ex. 2 [#41] (attaching bills of lading and forwarder's cargo receipts from the shipments). The Parties confirmed this point at a May 5, 2011 Motion Hearing in front of this court.

[9] See Pls.' Opp'n Dynasty Mot. Summ. J, 3 [#41]; id.; Ex. 2 [#41].

[10] Pls.' Opp'n Dynasty Mot. Summ. J, Ex. 2 [#41].

[11] Pls.' Opp'n Dynasty Mot. Summ. J, Ex. 2 [#41].

[12] Aff. Dawn Lowry Dynasty, Ex. A [#23] ("Unless [Dynasty] carries, stores or otherwise physically handles the shipment, and loss, damage, expense or delay occurs during such activity, [Dynasty] assumes no liability as a carrier and is not to be held responsibility for any loss, damage, expense or delay to the goods to be forwarded or imported as provided in paragraph 8 and subject to the limitations of paragraph 9 below, but undertakes only to use reasonable care in the selection of carriers, truckmen, lightermen, forwarders, custom brokers, [unintelligible]. . . ") [hereinafter Lowry Aff.].

of the incident and (b) any suit be filed within six months after the presentations of the claim.[13]

The two shipments (consigned to the Talbots) were transported by CSXT to the Talbot's premises in Massachusetts.[14] CSXT's role was only providing an engine and engineer that pulled the trains containing the rail cars that contained the subject shipments.[15] CSXT does not load or unload containers or place or remove seals from containers.[16] CSXT could only be engaged to transport the shipments here through CSX Intermodal, Inc. ("CSXI").[17] CSXI is a broker that acts as a shipper's agent that arranges rail services for its customers on railroads, such as CSXT.[18] CSXT's services were provided for by a contract that CSXI and CSXT had entered into—the

---

[13] Lowry Aff., Ex. A [#23] ("[Dynasty] shall not be liable under paragraph 8 for any claims not presented to it in writing within 90 days of either the date of loss or incident giving rise to the claim; no suit to recover for any claim or demand hereunder shall be maintained against the company unless instituted within six (6) months after the presentation of said claim or such longer period provided for under statute(s) of the State having jurisdiction of the matter."). Insofar as the last clause appears to afford Plaintiffs a contractually-agreed upon longer time to sue, none of the Parties explain the purpose of the clause, such as by pointing to relevant state statutes that would control. But presuming that these terms and conditions might also be used when Dynasty was operating as a NVOCC, then the purpose of the clause is likely to clarify that the Carriage of Goods by Seas Act ("COGSA") would apply to govern the terms of Dynasty's bills of lading. See infra note 52 and accompanying text.

[14] Pls.' Am. Compl. ¶¶ 7, 24 [#3]. Neither CSXT nor CSXI had a contract with Dynasty or Plaintiffs when the two subject containers were transported by CSXT. Decl. Angela Sylvester ¶¶ 19–20 [#28] [hereinafter Sylvester Decl.].

[15] See Sylvester Decl. ¶ 9–12 [#28].

[16] See Sylvester Decl. ¶ 9–12 [#28].

[17] CSXT Concise Statement Material Facts & Mem. Supp. Mot. Summ. J Against Pls., 4 [#27] [hereinafter CSXT Summ. J.].

[18] CSXT Summ. J, 4 [#27].

"Exempt Rail Services Contract Between CSXT and CSXI."[19]  This contract was fully in effect at the time of the shipments at issue.[20]  Any transportation by CSXT was also subject to the contract that CSXI had executed with its customers, which was the "2009 CSXI Service Directory 1."[21]

Neither CSXT nor CSXI were (a) notified of any shortages in Plaintiffs' shipments within 24 hours of the shipments' delivery to Plaintiffs nor (b) provided any written claims for either of the two subject shipments.[22]

Some of the cartons of clothing in the shipments were allegedly damaged, missing, or stolen by the time they arrived at the Talbot's place of business in Massachusetts.[23]  Plaintiffs allege that the damage or theft of the clothing occurred on CSXT's premises.[24]  Plaintiffs further claims that the clothing was damaged or lost because of Defendants' negligence or breach of contract.[25]

Dynasty first received written notice of a claim on March 25, 2009, at least as to the first shipment.[26]  Notice of loss as to the second shipment was sent on April 17, 2009.[27]

---

[19] Sylvester Decl., Ex. A [#28] (attaching the "Exempt Rail Services Contract Between CSXT and CSXI"); see Sylvester Decl. ¶ 6, 18 [#28].

[20] Sylvester Decl., Ex. A [#28]; see Sylvester Decl. ¶ 6, 18 [#28].

[21] Sylvester Decl. ¶¶ 13, 15 [#28].

[22] Sylvester Decl. ¶¶ 16–17 [#28].

[23] Pls.' Am. Compl. ¶¶ 8, 25 [#3].

[24] Pls.' Am. Compl. ¶¶ 8, 25 [#3].

[25] Pls.' Am. Compl. ¶¶ 8, 25 [#3].

[26] Lowry Aff., Ex. B [#23] (attaching e-mail correspondence).

[27] Lowry Aff., Ex. C [#23] (attaching e-mail correspondence).

Well over six months later, on March 5, 2010, Plaintiffs brought breach of contract and negligence claims against Defendants.[28]

On January 29, 2011, Dynasty filed its Motion for Summary Judgment Against Plaintiffs [#22]. And on January 31, 2011, CSXT filed its Motion for Summary Judgment Against Plaintiffs [#26]. Nearly two months after Defendants' motions, on March 19, 2011, Plaintiffs filed a Motion to Amend Complaint to Add CSX Intermodal Terminals, Inc. As a Defendant [#34]. Finally, on April 4, 2011, CSXT filed a Motion to Strike Plaintiffs' Opposition to CSXT's Motion for Summary Judgment and Affidavit of C.R. McCauley [#39].

III.  Discussion

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."[29] A "'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case."[30] The moving party bears the burden of showing that there is no genuine issue of material fact.[31]                                           A.

Dynasty's Motion for Summary Judgment

Dynasty moves for summary judgment, arguing that Plaintiffs' suit is time-barred and that

---

[28] Pls.' Am. Compl. [#3].

[29] Fed. R. Civ. P. 56(a). The standard for granting a summary judgment motion in an admiralty case is identical to the standard applied in non-admiralty cases. Napier v. F/V Deesie, Inc., 454 F.3d 61, 66 (1st Cir. 2006) (citing Cerqueira v. Cerqueira, 828 F.2d 863, 864–65 (1st Cir. 1987)).

[30] Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986)).

[31] See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

Plaintiffs' have failed to allege cognizable damages.[32]  Plaintiffs reply that their suit is not time-barred mainly because there are genuine issues of material fact in that Dynasty had issued bills of lading.[33]

        1.     <u>Freight Forwarder</u>

A freight forwarder generally arranges for the movement of cargo at the request of a client.[34]  A non-vessel operating common carrier ("NVOCC"), in contrast, consolidates cargo from numerous shippers into larger groups for shipment by an ocean carrier.[35]  A NVOCC issues a bill of lading to each shipper and if anything happens to the goods during the voyage, then the

---

[32] <u>See</u> Dynasty Int'l. Inc.'s Reply Pls.' Opp'n Dynasty's Mot. Summ. J., 3–5 [#45]; Dynasty Mot. Summ. J. Against Pls. [#22].

[33] Pls.' Opp'n Dynasty Mot. Summ. J, 1–3 [#41].

[34] <u>Ltd. Brands, Inc. v. UTi United States, Inc.</u>, No. 2:03-CV-1268, 2005 U.S. Dist. LEXIS 43589, at *5 (S.D. Ohio July 8, 2005); <u>see also</u> <u>Prima U.S., Inc. v. Panalpina, Inc.</u>, 223 F.3d 126, 129 (2d Cir. 2000) ("'[A freight forwarder] secures cargo with a steamship company, gives advice on governmental licensing requirements, proper port of exit and letter of credit intricacies, and arranges to have the cargo reach the seaboard in time to meet the designated vessel.'" (quoting <u>N.Y. Foreign Freight Forwarders & Brokers Ass'n v. Federal Maritime Comm'n</u>, 337 F.2d 289, 292 (2d Cir. 1964))).

[35] <u>Prima</u>, 223 F.3d at 129 (citing <u>Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Acme Fast Freight, Inc.</u>, 336 U.S. 465, 467–68 (1949); <u>Insurance Co. of N. America v. S/S Am. Argosy</u>, 732 F.2d 299, 300–01 (2d Cir. 1984)).  The First Circuit has appeared to not address this distinction in detail or been as pernickety about it, but likely because the relevant cases have not presented a dispute over this distinction.  <u>See, e.g.</u>, <u>Antilles Ins. Co. v. Transconex, Inc.</u>, 862 F.2d 391, 392 (1st Cir. 1988) (noting, in a case where there were bills of lading and lacking any FCRs, "[i]n this instance a shipper in Chicago, Illinois, shipped 126 cartons of shoes to a consignee in San Juan, Puerto Rico, defendant Transconex, Inc., a non-vessel operating common carrier, being the freight forwarder and party responsible on the bill of lading."); <u>Polyplastics, Inc. v. Transconex, Inc.</u>, 827 F.2d 859, 860 (1st Cir. 1987) ("Transconex, Inc. (Transconex), defendant/appellant, is a so-called non-vessel-operating common carrier (NVOCC), which does business essentially as a freight forwarder. . . . As a freight forwarder, an NVOCC is considered the 'carrier.'" (citing 49 U.S.C. § 11707(a)(2); <u>Fireman's Fund Am. Ins. Companies v. P.R. Forwarding Co.</u>, 492 F.2d 1294, 1295 (1st Cir. 1974)).

NVOCC is liable to the shipper "because of the bill of lading that [the NVOCC] issued."[36]  But a freight forwarder, because it does not issue a bill of lading, is not liable to the shipper for anything that occurs to the goods as long as the freight Forwarder limits it role to arranging for transportation.[37]

If a party labels itself as a "freight forwarder" but is nonetheless performing the function of a carrier, then the burden of demonstrating any deviation from what freight forwarders normally do in the maritime context rests on the party seeking to demonstrate such deviation.[38]  In determining whether a party acted exclusively as a freight forwarder, a court may consider the following factors: "(1) the way the party's obligation is expressed in documents pertaining to the agreement;"[39] (2) "the history of dealings between the parties;"[40] (3) "issuance of a bill of lading,"[41] and (4) "how the party made its profit."[42]

---

[36] Prima, 223 F.3d at 129 (citing Modern Office Sys., Inc. v. Aim Carribean Express, Inc., 802 F. Supp. 617, 623 (D.P.R. 1992); Fireman's Fund, 492 F.2d at 1296).

[37] Id. (citing United States v. Am. Union Transp., Inc., 327 U.S. 437, 442–43 (1946)); see also Am. Union, 327 U.S. at 442–43 (stating that "independent forwarders" assume "no responsibility for the transportation of goods").

[38] Prima, 223 F.3d at 130 n.1 (citing Acme Fast Freight, 336 U.S. at 467).

[39] Zima Corp. v. M.V. Roman Pazinski, 493 F. Supp. 268, 273 (S.D.N.Y. 1980) (internal citations omitted).

[40] Id. (internal citations omitted).

[41] Id. (internal citations omitted) (noting that a document entitled "bill of lading" is not in itself determinative).

[42] Id. (internal citations omitted) (explaining that the fourth factor refers to (a) whether the party acted merely as an agent of the shipper in procuring transportation by carrier and handling the details of shipment for fees which the shipper paid in addition to the freight charges of the carrier utilized for the actual transportation or (b) whether the party acted as a carrier in picking up the shipment at the shipper's place of business and engaging to deliver it safely at its ultimate

This court concludes that Dynasty was acting as a freight forwarder for twelve of the fourteen containers. The material facts underlying this issue are not in dispute: the Parties do not contest the authenticity of the fourteen documents produced to this court.[43] These documents and the four factors noted above reveal that for twelve of the fourteen containers, Dynasty was acting as a freight forwarder.

The first factor supports this court's conclusion because the twelve documents unambiguously express (a) that Dynasty was acting not as a carrier but as a "freight forwarder"[44] and (b) refer to the terms and conditions printed on the reverse of the FCRs, which limited Dynasty's liability to that typical of forwarding agents.[45]

The third factor also strongly supports this court's conclusion because the documents were clearly labeled with the title "forwarder's cargo receipt."[46]

The other factors do not cut against this court's conclusion. Neither Party presents any arguments regarding the second factor. Plaintiff's only argument perhaps pertains to the fourth factor. Specifically, Plaintiff argues that Dynasty was hired to "move the referenced goods" and

---

destination as well as charging a rate covering the entire transportation along with making its profit by consolidating the shipment with others, while the shipper seldom if ever knew which carrier would be utilized in the carriage of his shipment).

[43] Plaintiffs only dispute that Dynasty was acting as a carrier as evidenced by the two bills of lading. Pls.' Opp'n Dynasty Mot. Summ. J, 2 [#41]. The court addresses this argument below. See infra notes 47–49 and accompanying text.

[44] See Pls.' Opp'n Dynasty Mot. Summ. J, Ex. 2 [#41].

[45] See supra notes 12–13 and accompanying text.

[46] See Pls.' Opp'n Dynasty Mot. Summ. J, Ex. 2 [#41].

was the receiver of the goods.[47] Insofar as Plaintiff implies that Dynasty did more than act as agent of the shipper and in fact was a carrier by picking up or delivering the package, this implication finds no support in the record. The role that Dynasty had for the containers governed by the bills of lading should not be conflated with the role that Dynasty had for the twelve FCR containers.[48] For instance, in stark contrast to the two bills of lading, the twelve FCRs do not refer to Dynasty as the appropriate contact for delivery of the goods.[49]

This court, however, cannot conclude that Dynasty was acting as a freight forwarder with regard to the containers governed by the two bills of lading.[50] Those two bills of lading are notably distinguishable from the twelve FCRs. The two bills of lading are both (a) titled as a "bill of lading," (b) list Dynasty as the contact for delivery of goods, and (c) in fact refer to Dynasty as a "carrier."[51]

       2.   <u>Time-Barred</u>

The Carriage of Goods By Seas Act ("COGSA"), 46 U.S.C. § 30701, applies when there

---

[47] Pls.' Opp'n Dynasty Mot. Summ. J, 2 [#41].

[48] <u>See</u> <u>Timbauba Agricola S.A. v. M/V Cap San Raphael</u>, No. 03-CV-5012, 2004 U.S. Dist. LEXIS 24181, at *8–9 (E.D. Pa. Dec. 1, 2004) ("Because evidence of a bill of lading is essential to making a COGSA claim, district courts have required plaintiffs to specifically identify every relevant bill of lading in their complaints, even when a single carrier issues each of the bills of lading for cargo shipped on a voyage. Each bill of lading is considered a separate transaction or a separate contract, and each bill of lading only provides evidence of the agreement about and condition of the items carried under that one bill." (internal citations omitted)).

[49] <u>See</u> Pls.' Opp'n Dynasty Mot. Summ. J, Ex. 2 [#41].

[50] The two bills of lading have the following numbers: HK090209107 and HK09039939.

[51] Pls.' Opp'n Dynasty Mot. Summ. J, Ex. 2, 1–2 [#41].

is a contract for carriage of goods between a foreign port and a port of the United States.[52]  A suit

under COGSA (against a carrier) is timely only if filed within one year from the date of delivery of

the cargo.[53]  Agents of carriers, such as freight forwarders, however, are exempt from COGSA.[54]


Plaintiffs' claims as to twelve of fourteen containers are time-barred.  Because Dynasty

was acting not as a carrier, but as a freight forwarder, for twelve containers COGSA does not

apply.  The terms and conditions on the reverse of Dynasty's twelve FCRs unambiguously

required that any claim be presented to Dynasty within ninety days of the incident and any suit be

filed within six months after the presentations of the claim.[55]  Plaintiffs filed their notice of a claim

on March 25, 2009 and April 17, 2009 but did not file suit until March 5, 2010.  As a result,

---

[52] Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc., 896 F.2d 656, 659 (1st Cir.1990)
(citing 46 U.S.C. §§ 1300, 1312; EAC Timberlane v. Pisces, Ltd., 745 F.2d 715 (1st Cir. 1984));
see also Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp., 130 S. Ct. 2433, 2440 (2010)
("COGSA governs the terms of bills of lading issued by ocean carriers engaged in foreign
trade. . . . By its terms, COGSA only applies to shipments from United States ports to ports of
foreign countries and vice versa. . . . The statute, however, allows parties 'the option of extending
[certain COGSA terms] by contract" to cover "the entire period in which [the goods] would be
under [a carrier's] responsibility, including [a] period of . . . inland transport.'" (alternations in
original) (internal citations omitted)).

[53] 46 U.S.C. § 30701(6) ("In any event[,] the carrier and the ship shall be discharged from
all liability in respect of loss or damage unless suit is brought within one year after delivery of the
goods or the date when the goods should have been delivered . . . ."); see also Barretto, 896 F.2d
at 859 ("COGSA discharges the carrier and the ship from all liability for losses or damages unless
'suit is brought within one year after delivery of the goods or the date when the goods should
have been delivered. . . .'" (internal citations omitted)).

[54] Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 301 (1959) (explaining that
COGSA does not apply to agents of carriers).

[55] See supra note 13 and accompanying text.

Plaintiffs failed to comply with the terms required by their contract.[56] This court therefore holds that Dynasty's <u>Motion</u> is ALLOWED as to the twelve containers governed by FCRs.

### 3. Damages

In a COGSA case a plaintiff must allege facts to support that the carrier delivered the cargo to its owner or consignee in damaged condition.[57]

Plaintiffs claim that Dynasty is liable for damage to cargo in fourteen separate containers and allege approximately $66,000.00 in total damages.[58] Although Plaintiffs distinguish between the first and second shipment, Plaintiffs have failed to allege what portion of the total alleged damages attached to each of the fourteen containers. Because there is a dispositive legal distinction between the cargo shipped in the twelve containers governed by FCRs and the cargo shipped in the two containers governed by bills of lading,[59] Plaintiffs' failure to demarcate damage figures for each of the fourteen containers renders Plaintiffs' damages allegations not cognizable as a matter of law.[60] That is, with Plaintiffs' claims regarding the twelve FCR containers no longer being a part of this case, Plaintiffs' general allegation of damages are no longer applicable.

---

[56] Plaintiffs have also provided no reason as to why these restrictions were not reasonable. <u>See</u> <u>Island View Residential Treatment Ctr. v. Blue Cross Blue Shield of Mass., Inc.</u>, 548 F.3d 24, 27 & n.2 (1st Cir. 2008) ("What case law exists generally supports reasonable contractual restrictions on the period for bringing lawsuits . . . ." (internal citations omitted)).

[57] <u>Daewoo Int'l (Am.) Corp. v. Sea-Land Orient Ltd.</u>, 196 F.3d 491, 484 (3d Cir. 1999) (internal citations omitted).

[58] <u>See</u> Pls.' Am. Compl. ¶ 10–39 [#3].

[59] <u>See</u> <u>supra</u> notes 43–49 and accompanying text.

[60] <u>Cf.</u> <u>Norman v. Elias</u>, No. 95-1315, 1995 U.S. App. LEXIS 36341, at *3–4 (1st Cir. Dec. 21, 1995) (citing <u>Browning Debenture Holders' Comm. v. DASA Corp.</u>, 524 F.2d 811, 817 (2nd Cir. 1975)).

This court is unable to award relief based on the two remaining containers governed by bills of lading because of Plaintiffs' failure to specify any damages.[61]  Dynasty's Motion with regard to the remaining two containers governed by bills of lading is therefore ALLOWED.[62]

### B.    CSXT's Motion for Summary Judgment

CSXT moves for summary judgments against Plaintiffs, arguing that CSXT is exempt from suit by statute and that the lawsuit is time-barred.[63]  Plaintiffs reply that there is a genuine issue of material fact as to whether there were thefts of items from the containers while they were in CSXT's custody.[64]  Plaintiffs contend that CSX personnel changed the seals on some containers because (a) some containers' security had been breached and (b), as to Plaintiffs' second shipment, following the arrival of containers at CSX's South Kearny facility, the original seal affixed on a container was removed and replaced with a ribbon seal.[65]

---

[61] See Browning, 524 F.3d at 817 ("When, as here, an issue is rendered moot by plaintiffs' failure to specify monetary damages or other operative relief, and the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed."); cf. Santiago v. Sherwin Williams Co., 3 F.3d 546, 551 (1st Cir. 1993) ("In sum, allowing plaintiff to recover her full damages from the five named defendants despite her inability to specify the time of their negligence may well, on this record, do violence to the SJC's stated interest in ensuring that wrongdoers be held liable only for the harm they have caused.").

[62] Plaintiffs never replied to this argument, either in writing or in front of this court at a May 10, 2011 Motion Hearing.  Moreover, Plaintiffs, despite filing a Motion to Amend Complaint [#34] for a different reason, never suggested any amendment to specify any amount of damages for the remaining two containers.

[63] CSXT Summ. J, 4–12 [#27].

[64] Pls.' Opp'n CSX Transportation Inc.'s Mot. Summ. J., 2 [#35].  Note, however, that many of these facts are the subject of a Motion to Strike [#39].

[65] Affidavit C.R. McCauley, 1–2 [#36].

Plaintiffs' arguments fail and CSXT's Motion is ALLOWED for at least two separate reasons.

### 1. CSXT's Shipments Are Exempt

The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, governs the liability of carriers for lost or damaged goods.[66] The Carmack Amendment imposes requirements on carriers, such as issuing a receipt or bill of lading for goods received for transport, and holds rail carriers liable for "the actual loss or injury to property."[67] The Carmack Amendment provides courts with original jurisdiction.[68] In addition to addressing the actual transport of goods, the Carmack Amendment also sets requirements for the claim-filing process and allows carriers to contractually limit the time for filing claims as long as the limit is not less than nine months.[69]

Shippers and carriers, however, can sidestep this federal regulation of transportation

---

[66] Rini v. United Van Lines, Inc., 104 F.3d 502, 503 (1st Cir. 1997).

[67] 49 U.S.C. § 11706(a).

[68] 28 U.S.C. § 1337(a) (authorizing district courts as having "original jurisdiction of an action brought under [§ 11706] . . . if the matter in controversy for each receipt or bill of lading exceeds $ 10,000, exclusive of interest and costs.").

[69] 49 U.S.C. § 11707(e); see Fireman's Fund McGee v. Landstar Ranger, Inc., 250 F. Supp. 2d 684, 687–88 (S.D. Tex. 2003) ("The shipper must meet minimum claim filing requirements, which include providing the carrier written notice within time limits specified in the bill of lading, asserting facts identifying the property, assessing liability for the loss and demanding a determinable amount of money." (citing 49 C.F.R. § 1005.2(b) (2002)); Trailblazers Int'l Inc. v. Central Freight Lines, Inc., 951 F. Supp. 121, 123 (S.D. Tex. 1996) (noting that strict compliance with claim filing provisions is a "mandatory condition precedent to recovery on a claim." (citing Salzstein v. Bekins Van Lines, Inc., 993 F.2d 1187 1190, (5th Cir. 1993)). Note that the First Circuit is characterized as requiring strict compliance with filing requirements. See Bruker Instruments, Inc. v. Bay State Moving Sys., Inc., 15 F. Supp. 2d 156, 160 (D. Mass. 1998).

agreements by entering into private contracts pursuant to 49 U.S.C. § 10709.[70]  The contract

must be between shippers and carriers for "specified services [that are provided] under specified

rates and conditions."[71]  The "exclusive remedy" for any actions arising out of such private

contracts "shall be an action in an appropriate State court of United States district court, unless

the parties otherwise agree,"[72] where jurisdiction is already proper.[73]

   The "Exempt Rail Services Contract Between CSXT and CSXI" represents a private

contract that is exempt from the Carmack Amendment.  In particular, the contract encompasses

all the attributes of a "contract" under the plain language of section 49 U.S.C. § 10709.[74]  The

contract was an "(i) an agreement to provide specified services [such as interstate rail services],

(ii) to which one or more interstate rail carriers are parties [CSXT] and (iii) to which one or more

purchasers of rail services are parties [CSXI], (iv) under specified rates and (v) under specified

conditions."[75]  Moreover, the contract's deviation from the statutory obligations imposed on rail

carriers by 49 U.S.C. §11101 "evinces the parties' intent to enter into a § 10709 contract."[76]

---

[70] Babcock & Wilcox Co. v. Kan. City S. Ry. Co., 557 F.3d 134, 138 (3d Cir. 2009).

[71] 49 U.S.C. § 10709(a).

[72] 49 U.S.C. § 10709(c)(2).

[73] See Babcock, 557 F.3d at 138 ("Section 10709 now clarifies that the section 'does not confer original jurisdiction on the district courts of the United States based on [28 U.S.C. §§ 1331 or 1337].'" (citing 49 U.S.C. § 10709(c)(2))).

[74] See id. at 139.

[75] Id.

[76] Id.

Such deviations include CSXI and CSXT agreeing to a rate that could be amended.[77]  The contract's provision of services for "agreed to" rates and its labeling as an "Exempt Rail Services Contract" reinforces that the agreement is a § 10709 contract.[78]  Plaintiffs do not argue that the contract terms conform with § 11101 or provide any evidence to doubt CSXT's and CSXI's intent to enter into a private contract.

Under the "Exempt Rail Services Contract Between CSXT and CSXI," CSXT is only responsible for cargo lost or damaged if the shipments were damaged in a derailment or accident while the container or trailer and cargo were in CSXT's possession.[79]  There was no derailment or accident on either of the CSXT trains that transported the containers on the subject shipments.[80]  In fact, it is undisputed that the containers were ultimately delivered to the Talbots in Massachusetts.[81]  Because the CSXT trains transporting the containers in the two subject shipments were not involved in an accident or derailment, CSXT's Motion is ALLOWED.

2. Time-Barred

---

[77] See id. at 144.

[78] See Tokio Marine & Fire Ins. Co., Ltd. v. Mitsui O.S.K. Lines, Ltd., No. CV 02-3617 ER, 2003 U.S. Dist. LEXIS 24803, 2003 WL 23181013, at *1–4 (C.D. Cal. June 27, 2003) (concluding that an agreement was a § 10709 contract because it was entitled "Exempt Rail Transportation Agreement" and "provide[d] rail transportation pursuant to specified rates and conditions").

[79] Sylvester Decl., Ex. A [#28].

[80] Sylvester Decl., ¶ 14 [#28]; id., Ex. C. [#28].  Plaintiffs do not allege any accident or derailment.  Plaintiffs focus their allegations on something occurring at the South Kearny facility in New Jersey, see Pls.' Opp'n CSXT's Mot. Summ. J, 2–4 [#35], for which CSXT cannot now be sued, as explained above.

[81] Pls.' Am. Compl. ¶¶ 7, 24 [#3].

Plaintiffs' suit against CSXT is also time-barred. CSXT was engaged only through its agent, CSXI.[82] CSXT's provision of services was subject to CSXI's contracts with its customers, including Plaintiffs. Section Nine of the relevant contract—"the 2009 CSXI Service Directory 1" —required that any claim be submitted in writing to CSXI within nine months of the shipment's delivery.[83] Of the two shipments, one was apparently delivered by March 19, 2009 (or at least March 25, 2009) and all the shipments were delivered no later than April 17, 2009.[84] Plaintiffs never submitted a written claim to CSXI.[85] Plaintiffs, moreover, did not file suit until March 5, 2010, nearly a year after the latest delivery.[86] Plaintiffs' suit against CSXT is therefore time-barred and CSXT's <u>Motion</u> is ALLOWED.[87]

---

[82] <u>See</u> <u>supra</u> notes 14–21 and accompanying text.

[83] Sylvester Decl., Ex. B [#28] ("All claims for damage to or loss of Cargo must be in writing and received by CSXI within nine months from the date of delivery of the Shipment. If the Shipment has not been delivered, then the claim must be filed within nine months of the time that the Shipment was scheduled for delivery. All claims relating to a Shipment shall be filed solely with CSXI . . . .").

[84] Sylvester Decl., Ex. C [#28] (attaching CSXT's movement records); Lowry Aff., Ex. C [#23] (attaching e-mails from Plaintiffs to Dynasty). Neither Plaintiffs nor co-Defendant Dynasty produced any written claims to CSXT or CSXI for the two subject shipments.

[85] <u>See</u> <u>supra</u> note 22 and accompanying text.

[86] This point assumes <u>arguendo</u> that a complaint in a lawsuit can in fact be considered a pre-suit written claim. <u>Cf.</u> <u>Ideal Steel Supply Corp. v. Jan Trucking & Rigging, Inc.</u>, 04-CV-1196 (TCP) (ARL), 2006 U.S. Dist. LEXIS 24784 at *8 n.1 (E.D.N.Y. Apr. 26, 2006) (noting that a complaint in a lawsuit "should not be considered a pre-suit written claim because it conflicts with the primary purpose of the Carmack Amendment, which is to limit litigation through the filing of claims" (citing <u>Pathway Bellows, Inc. v. Blanchette</u>, 630 F.2d 900, 904 (2d Cir. 1980))).

[87] Plaintiffs do not argue that the contractual limitation is unreasonable. <u>See</u> <u>supra</u> note 56. Plaintiffs also do not contest that the provisions of this private contract allow the Parties to avoid the Carmack Amendment. <u>See</u> <u>Babcock</u>, 557 F.3d at 138 (explaining that carriers and shippers can avoid federal regulation of transportation agreements by entering into private

Additionally, the contract that governed CSXT's services bars the suit against CSXT for another reason. The contract contained a covenant not to sue: the contract required that the only correct party to be sued was CSXI.[88] CSXI, as the contractual intermediary between CSXT and Plaintiffs, can limit CSXT's liability.[89] No suit was filed against CSXI, as required by the contract. Plaintiff is therefore barred from asserting claims against CSXT pursuant to the contract that CSXI entered into with its customers.[90]

C. Plaintiffs' <u>Motion to Amend</u>

Plaintiffs, after summary judgments had been briefed and over a year after filing their Complaint, moved to amend their Complaint to include CSX Intermodal Terminals, Inc.

---

contracts pursuant to 49 U.S.C. § 10709). But even if the Carmack Amendment did apply in this case, the requirement for Plaintiffs (and their subsequent failure) to file a written claim with CSXI within nine months would be seemingly no less assailable. <u>See</u> 49 U.S.C. § 14706(e)(1) ("A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section . . .").

[88] Sylvester Decl., Ex. B [#28] ("All claims relating to a Shipment shall be filed solely with CSXI . . . .").

[89] <u>See</u> <u>Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.</u>, 543 U.S. 14, 33 (2004) ("[W]hen it comes to liability limitations for negligence resulting in damage, an intermediary can negotiate reliable and enforceable agreements with the carriers it engages."); <u>Ltd. Brands, Inc. v. F.C. (Flying Cargo) Int'l Transp. Ltd.</u>, No. C2-04-632, 2006 U.S. Dist. LEXIS 17029, at *20 (S.D. Ohio Mar. 27, 2006) (deciding that plaintiffs were barred from asserting claims against defendants pursuant to contractual terms in a Himalaya clause and covenant not to sue).

[90] Note that both of Plaintiffs' disputed material facts are in fact not material. A fact is material if it is a fact that has the "potential of affecting the outcome of the case." <u>Sensing v. Outback Steakhouse of Fla., LLC</u>, 575 F.3d 145, 152 (1st Cir. 2009) (internal citations and quotation marks omitted). But even if Plaintiffs' contention that the "security of the container had been violated" before they left CSXT's facility were true, Pls.' Opp'n CSX Transportation Inc.'s Mot. Summ. J., 2 [#35], then the outcome of the case would remain unchanged: there was still no accident or derailment for which CSXT may be liable nor did Plaintiffs file a timely a claim.

("CSXIT"), the party that allegedly owned or operated the rail yard where the goods were stolen.[91] Plaintiffs contend that CSXIT may have direct responsibility for the loss and that there is no prejudice to any Defendants because CSXIT and CSXT are part of the same parent corporation, CSX Corporation.[92] Defendants reply (1) that CSXIT did not in fact own, operate, or control the rail yard at the time of the incident and (2) that Plaintiffs were alerted to the need to amend (to add CSXI, not CSXIT) on June 24, 2010.

When a plaintiff seeks to amend a complaint after a defendant has moved for summary judgment, "a plaintiff is required to show 'substantial and convincing evidence' to justify [this] belated attempt to amend . . . ."[93] A motion to amend "whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy'" faces particular disfavor.[94] In fact, "protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."[95] Moreover, if a proposed amendment "would be futile or would serve no legitimate purpose, the district court should not

---

[91] Pls.' Mot. Amend Compl. Add CSX Intermodal Terminals, Inc. As Def., 1–2 [#34] [hereinafter Pls.' Mot Amend Compl.].

[92] Pls.' Mot. Amend Compl., 1–2 [#34].

[93] Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Resolution Trust Corp. v. Gold, 30 F.3d 251, 53 (1st Cir. 1994)).

[94] Steir, 383 F.3d at 12 (citing Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52 (1st Cir. 1998)).

[95] Steir, 383 F.3d at 12 (citing Acosta-Mestre, 156 F.3d at 52–53).

needlessly prolong matters."[96]

Plaintiffs' request to amend must be denied because of Plaintiffs' failure to explain their delay to propose an amendment and the amendment's futility.

First, Plaintiffs have not presented substantial and convincing evidence to justify amending their <u>Complaint</u> at such a late date—after discovery has concluded and summary judgment motions have been filed. Plaintiffs should have known as early as June 24, 2010 that they may need to conduct additional discovery or seek to amend because CSXT had asserted in its <u>Answer</u> that CSXT's liability was governed (and limited by) a contract with CSXI.[97] But Plaintiffs waited nearly nine months after CSXT's <u>Answer</u> and two months after Defendants' <u>Summary Judgment Motions</u> were briefed to file their <u>Motion to Amend</u>. Plaintiffs have not approached within visible distance of meeting their "burden of showing some 'valid reason for [their] neglect and delay.'"[98] Inasmuch as Plaintiffs' only reason for delay is that the need to amend "has become apparent [to them] through the course of this case,"[99] that is no specific reason or explanation at all. Plaintiffs therefore have not even shown good cause for their lack of diligence.[100]

---

[96] <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 59 (1st Cir. 1990) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

[97] Ans. & Affirmative Defenses Am. Compl., 20–22 [#4].

[98] <u>Acosta-Mestre</u>, 156 F.3d at 52 (quoting <u>Stepanischen v. Merchants Despatch Transp. Corp.</u>, 722 F.3d 922, 933 (1st Cir. 1983)).

[99] Pls.' Mot. Amend Compl., 1–2 [#34].

[100] A late proposed amendment is subject to the demanding "'good cause' standard of Fed. R. Civ. P. 16(b)." <u>Steir</u>, 383 F.3d at 12 (quoting <u>O'Connell v. Hyatt Hotels of P.R.</u>, 357 F.3d 152, 154–155 (1st Cir. 2004)) ("This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." (citing <u>O'Connell</u>, 357 F.3d at 154–55)).

Second, allowing Plaintiffs' Motion would likely be an exercise in futility. Plaintiffs' base their proposal to amend on the fact that CSXIT allegedly owned, operated, or controlled the facility at South Kearny, New Jersey in March and April of 2009 (when the alleged loss occurred). This is a mere allegation for which Plaintiffs have no evidentiary support. Defendants, in contrast, through an affidavit from a manager at CSXT, clarify that this allegation is flatly inaccurate. CSXIT did not in fact own or control the facility.[101] Additionally, the claim might also be futile and be barred against CSXIT because Plaintiffs did not present a written claim to CSXI within nine months of delivery.[102]

D.    CSXT's Motion to Strike

CSXT moves to strike Plaintiffs' Opposition to CSXT's Motion for Summary Judgment (as well as the Affidavit of C.R. McCauley) for four reasons, including untimeliness, hearsay, and irrelevancy.

But even this court's giving full credit to Plaintiffs' underlying disputed materials was of no consequence to Defendants' position because of Defendants' victory on their Summary Judgment Motions.[103] The Motion to Strike is therefore DENIED AS MOOT.

---

[101] CSX Transportation, Inc.'s Resp. Opp'n Pls.' Mot Amend Compl., Ex. B ¶ 4 [#38] (attaching Second Declaration of Angela Sylvester) [hereinafter CSXT Opp'n Mot. Amend]. The facility was in fact controlled by CSXI and leased from CSXT. CSXT Opp'n Mot. Amend, Ex. B ¶ 5 [#38].

[102] See supra notes 83–87 and accompanying text (explaining that any interaction with CSXI required presentation of a written claim within nine months). This court also notes that allowing Plaintiffs to file an amended Complaint would seemingly prejudice Defendants by "requiring a re-opening of discovery with additional costs [and] a significant postponement of the trial." Steir, 383 F.3d at 12 (citing Acosta-Mestre, 156 F.3d at 52).

[103] See Bennett v. Saint-Gobain Corp., 507 F.3d 23, 29 (1st Cir. 2007) (affirming district court's decision that certain remarks were inadmissible and adding that "even if the grievances did

IV.     Conclusion

For the foregoing reasons, Dynast's <u>Motion for Summary Judgment Against Plaintiffs</u>

[#22] and CSXT's <u>Motion for Summary Judgment Against Plaintiffs</u> [#26] are ALLOWED.

Plaintiffs' <u>Motion to Amend Complaint to Add CSX Intermodal Terminals, Inc. as a Defendant</u>

[#34] is, however, DENIED and CSXT's <u>Motion to Strike Plaintiffs' Opposition to CSXT's</u>

<u>Motion for Summary Judgment and Affidavit of C.R. McCauley</u> [#39] is DENIED AS MOOT.

AN ORDER HAS ISSUED.

____/s/ Joseph L. Tauro_____
United States District Judge

---

not comprise hearsay, they would not have had a decisive bearing on the issues before the district
court" and would not have "affected the outcome").